Good morning, Judy Clark and Roger Peven on behalf of John Lynch. We got the court's questions, and I feel like I'm here to talk to you about a moving target called the Commerce Clause. The only thing I can really think that it's moving is, given Lopez and Morrison and Jones, the Supreme Court cases, it's moving away from having the federal courts have jurisdiction over violent crime. But to take it from there to the court's two questions, question one, if a defendant transports or causes the travel of someone out of state for the purpose of the robbery, can the transportation or travel be considered in determining that the travel affects interstate commerce? And I have several answers to that. One, the Hobbs Act itself says whoever I ask you to hold on for one second. Judge Berzon, she brought back the wrong book. So if you could just pause in place for one second, she's going to retrieve it. We have it. Why don't you reset the time? You were about to discuss the order. Yes. The simplest answer is the Hobbs Act itself says whoever affects commerce by robbery, not by travel. So that's the simplest answer. It's not the travel that affects commerce that's an issue. It's the Hobbs Act says whoever delays, interferes, or affects commerce by robbery, not by travel. The second answer to that question is regardless of the answer to that question, under this Court's decision in Lynch 1 and adopting the Collins test, we still have to look back to the three prongs of the Collins test to see if the case fits within one of those prongs. I guess there's some argument about whether they adopted the Collins test in all of them. I think that's pretty clear in the opinion. Did they adopt the only if language? The only if language. Collins has that language for right before it sets out the factors, only if. One, two, or three. And Lynch, Judge Wallace's decision in Lynch omits that. That seems to be a distinction I would think without a difference in this case, because what this Court pretty clearly said was we're not going to break from our sister circuits. Collins sets forth the test. It narrows. Kagan. Well, Collins really, aside from whatever law the case issue there may be here, if we looked at this issue afresh, was Collins intended or could it have been intended to encompass any Commerce Clause theory or only a substantially affect theory? Why wouldn't there also be jurisdiction under the Commerce Clause for instrumentalities of commerce? And there are three different Commerce Clause theories, and this seems to be addressed only to one of them. That is, to the one in which you're trying to deal with a totally, a facially intrastate transaction, but looking on the larger effect on interstate commerce. Whereas here you had a crime in which people were going back and forth between states. Right. Why would you be looking at it through this prism at all? Well, Collins really was looking at the Hobbs Act robbery. It wasn't going beyond that. I don't think Collins made any distinctions. So if somebody robbed a truck in Nevada and took it to Montana and sold it to Montana in Montana, we'd go through the Collins Act? That wouldn't be a dire act? I think that would probably be another Federal crime. If you robbed a truck. Why wouldn't it be this Federal crime? Hmm? Why wouldn't it be this Federal crime? Well, because the – well, I guess you've got to know more about the court, your hypothetical. Is that person, is that Quackenbush's sand and gravel company on the truck, and they're targeting that truck because they're taking the assets of the sand and gravel company? I mean, that's what you're looking to for the Hobbs Act robbery. I don't think you're looking to what you do with the proceeds. You're looking at what the robbery does. And that's why Collins says let's narrow it because we're looking at the robbery of something. And if it's the robbery of another person and it's just run-of-the-mill robbery, then we're not talking about future – Forgetting Collins, why is there a Commerce Clause problem at all if somebody steals a truck in Nevada, takes it to Montana, and sells it in Montana? Why wouldn't the Commerce Clause reach that with nothing else? Well, it depends on what the Commerce Clause is reaching. I'm sorry if I'm not understanding. It's reaching a robbery. Well, now the – but then you've got to look at the robbery itself. What is the individual robbing? Is the individual robbing you or robbing a business and taking that asset someplace else? I think that's what Collins is saying to us is, look, if we don't narrow the federal jurisdiction, if we don't narrow the Commerce Clause here, we're going to take into account every robbery of any human being because – Perhaps if Collins were upset of things in which the matters that were actually stolen never left the state, right? They never came into the state. They never went out of the state directly. And there was an attempt to rely on a theory of where those things had been before or what the impact was – the indirect impact was going to be later. The crime itself – I'm sorry. Are you talking about Collins? Okay. The crime itself did not involve any crossing of state lines. Well, the defendant in Collins stole the car with the cell phone in it, left the house, and flew himself to Los Angeles where he was apprehended and then brought back. So I'm not sure that – I mean, while Collins didn't address those facts, those were facts of the case. And I think another thing that what you're raising is whether or not this is factual – the question, number one, is factually applicable here. The way Brian Carrero got to Montana was, according to the facts of the case anyway, was that Lynch called Pizzacello and said, I need a ride back home to Nevada or I need some money. That's not all. And nobody mentions it. The government doesn't mention it. I read the transcript of this trial. Why this is not mentioned. These people were in business together. You mean the drug business? Of course. Well, let me just – let me tell you the number of places in the record. Page 641. Prior to the trip to Montana, all of the participants were in the illegal drug business in Las Vegas as buyers, sellers, and users of controlled substance. Carrero purchased drugs and gave them to Lynch to sell. That's at 642. Carrero supplied the money and drugs to Lynch to sell and split the profits. Transcript 644. Lynch fell behind in drug payments to Carrero. 644. They almost came to blows. Lynch owned Carrero money on drug deals before the Montana trip. Lynch was indebted to Carrero for past drug purchases. At page 1305, Lynch asked Carrero to come to Montana after he got Carrero, got his workman's comp money, and Lynch asked Carrero to bring methamphetamine to him in Montana. Lynch also, and I must say you did an excellent job, as you always do, have been teaching both pizzacello and the jailhouse witnesses. But in the record, Lynch admits that he killed Carrero, admitted that to Pentland. I think that was the witness's name. That Lynch asked Carrero to bring a pound of meth from Las Vegas to Montana. He then told Pentland, the jailhouse witness, that the murder of Carrero was a drug robbery. That's transcript pages 968 to 972. Carrero had a pager with him on the Montana trip for conducting the drug business. My point is, if we're talking about business, whether it be legal or illegal, it's there. But Collins distinguished. Collins got into this depletion of assets, which is referred to in the prior panel opinion. Collins distinguishes between direct evidence of effect on interstate commerce, and I think there's a lot of that in here, and the indirect effect, such as would be in the Collins case, where the robbery took place in one state and the government made the argument, well, the victim couldn't use his car in interstate business. That's the indirect effect. And that's exactly what Collins says. Collins says both direct and indirect effects on interstate commerce may violate 1951A. The government's depletion of assets theory, and that's what the first panel referred to, falls into the indirect category. This indirect category relies on a minimal adverse effect upon interstate commerce by a depletion of the resources, which permits the reasonable inference that its operations are obstructed or delayed. Many cases, the 11th Circuit, for example, in I think it's Carsononi, where the individual traveled from Chicago to Florida, robbed the elderly widow of her jewelry and money, and flew back to Chicago. The 11th Circuit had adopted the Collins test, but they said in Carsononi that this is direct evidence of effect on interstate commerce. They say Collins is an effective barometer for measuring a defendant's action and their effect on interstate commerce. However, we have repeatedly held that in determining whether there is a minimal effect on commerce, each case must be decided on its own time. The 7th Circuit, people traveled from Detroit to Chicago. Not that far. To sell drugs. Marrero, the drug dealer. Right. And they said the fact that they're in the drug business is sufficient evidence of interstate nexus. So I think, and I want you to have the opportunity to address this. The answer to that question is no. Is there a direct and indirect distinction that is made in Collins? Because I think there's a lot of direct evidence in this case. Right. I would like to just say sort of the answer to your question is no, but there was a lot there. First, the drug implications, nobody bought that. And that's why the government doesn't. Nobody what? Nobody bought that. I mean, it's in the record. But it wasn't a credible theory at all. I mean, in Pizzacello's plea agreement with the government, in Pizzacello's testimony, the only evidence that the government had at all of how Brian Carrero got to Montana was Pizzacello's testimony. They adopted it in his plea agreement. They adopted it by putting him on the witness stand. And they said Brian Carrero invited himself up to Montana saying I'm going to get some money from my SSI. I'm going to, you know, I'd love to come up and go hunting and whatever. If there's evidence, I suppose to summarize what Judge Black and Bush put before you, if there's evidence in the record demonstrating a direct impact on interstate commerce through business, i.e., in a legal business, why isn't that enough? Well, because there's no credible evidence of that. How do we know whether it's credible or not? Well, because, you know, you've got to look at what the government argued to the jury and what the government thought it could prove legitimately. And this guy in the jailhouse saying that the defendant said it was a drug deal, the defendant gets on the witness stand and says, I don't know what was going on. I was out there in the campsite. And Pizzacello pulls the gun and shoots the guy. There's no evidence supporting Pentland's jailhouse alleged confession by Lynch other than Pentland saying it at all. I mean, the government didn't even adopt that, even close to that theory at the time. And it does seem like you'd have to have credible evidence of this being a drug transaction. And there just wasn't. All of the credible, if there was credible evidence at all of what was going on, it was Brian Carrero invited himself to Montana to go hiking and hunting and whatever, and ended up getting killed up there. There was no indication that he was lured up there for the purposes of being robbed or killed. None. The Pizzacello plea agreement says that he invited himself up there. The Pizzacello testimony says that he invited himself up there. That was it. I didn't understand any of the evidence that Judge Quackenbush referred to from the trial transcript as involving Pizzacello. My understanding is that the thrust of this evidence is that Lynch and the victim were doing interstate drug business. No. No. I mean, these guys were, I mean, according to Pizzacello anyway, these guys in Las Vegas, you know, sort of fronted drugs to each other or, you know, one fronted the drugs, one got the money and gave the money back. And it was a small-level sort of, you know, just-beyond-possession kind of thing. That was what Pizzacello said about their relationship, but not about the relationship of this trip. Let me – I think I understand your point on that. Let me ask a question that's bothering me. Lynch could not and did not overrule Atkinson, right?  Atchison, right? It did not. And it could not. It did not and it could not. The panel was concerned about the continued viability of Atchison given the language in Morrison. But the panel said, look, in Atchison we were dealing with business people that were lured to a building to look at it for a business venture. And then they were, you know, held hostage and extorted and robbed. So that was the primary distinction that they made in Atchison. Now, as for the substantial effects and de minimis, no, that hasn't been overruled. But I don't think that matters here. And I think that's where Judge Quackenbush was going with the direct and indirect effects question. We still have to look to the test set forth in Collins. And to determine whether there was a direct or indirect effect on interstate commerce, you have to look to the various prongs. I don't think we can get away from that. The train left the station in this case by Lynch 1, adopting – explicitly adopting the test in Collins, saying we don't want to divert from our sister circuits. But I think that's the – they adopted the indirect test. The first panel didn't go to what evidence of direct effect is there. The depletion under Collins and Lynch 1, the depletion of assets theory, is when you can't show any other interstate nexus, you show as a result of the intrastate robbery or murder in this case that there is an indirect effect. By reason of stealing somebody's money and credit cards and all this, it adversely affects that person's interstate business or, as this case involved, the bank account. Well, in Collins, though, wasn't the guy an employee of a national company, used his car and his cell phone for the purposes of – No, no interstate nexus in the actual robbery in Collins. But there's no – The argument was, well, but there's an indirect effect, that being because the victim's car was taken, he couldn't thereafter conduct his interstate business. That's the indirect effect. As opposed to this case where we've got people going back and forth across state lines using the victim's credit card for various purposes, evidence in the record of the victim and the – and Lynch being in the drug business. Right. But then again, the statute itself says that commerce has to be affected by robbery, not affected by interstate travel. And I think we can't ignore – I think you're leaving out a phrase. In any way or degree. Right. By robbery. Not by travel. Delayed, interfered with in any way or degree by robbery. And that's where I think we get to the direct and indirect. We cannot look to the fact that I flew up here from San Diego, California, to argue in this case, and then I get robbed on the street corner. That doesn't seem to put me within the Hobbs Act, just because there was interstate travel. And that's the – Well, but there's the movement of any article in interstate commerce. We certainly had articles. If you want to limit it to what took place after the robbery and murder, we had his truck going through several states. We had his credit card going through several states. Right, but that's after the robbery. That's after the robbery. Well, I know. I thought that was your argument. You were saying it has to be – the movement has to be the proximate cause of the robbery. I think we can look at everything that led up to the robbery, that being evidence in the record that Lynch invited the victim up there. He was indebted to the victim for drug transactions that had taken place in another state. He asked the victim to bring a pound of meth from Las Vegas to Montana. I think we can look at it all. I don't think, under what Collins is trying to say Lopez told the courts to do, that is narrow federal jurisdiction, I don't think we can look at what happens before or after. What we have to do is look at how interstate commerce is affected or is likely affected. Is this a business person who is robbed because he or she is a business person? What if the person was kidnapped in Las Vegas, taken to Montana and robbed, and the robber then takes the truck and the money back to Nevada? For the purpose of what? For the purpose of – see, that's – You're saying the only thing you can consider is the actual act of robbery. Well, obviously that only takes place in any case in one state. I think it's – I think that's what Collins is saying. It's a question whether or not there's evidence that the robbery in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce. Well, I suggest to you that just taking the truck alone, there was the movement of the article in commerce subsequent to the robbery. We've taken a fair amount of your time on the OPS Act interstate commerce thing. One of the reasons we put the case last is that we understood that it would take some time to weave through these issues. If – you can just ignore the clock for the moment. And the trapdoor. There's no trapdoor. This is the Ninth Circuit. This is not the Supreme Court. I know. That's right. There was a trapdoor reference since I had the reading assignment during the trial of the case. I think that's what you're referring to. If you would like to touch on the other issues or wrap up on this issue, you go right ahead. I will tell you I'm going to give the extra time to the government. I'm going to add it to their time. And I will also give you some time for rebuttal. Well, I'm not sure if I've answered any of the questions. I mean, I can see the position that's being staked out. But, you know, I don't want to just stand up here and yammer at you because I want to answer the question. I mean, if – assuming we thought there was anything in this general set of thoughts we've been discussing, whether there's a law of the case problem with regard to that. I think you're bound by Lynch 1 that said to Judge Malloy, apply the Collins test. And if he doesn't meet the Collins test, grant the Rule 29. Judge Malloy applied the Collins test, I think, incorrectly and too expansive a way. And we're back up here on his application of the Collins test. If you had been the panel in Lynch 1, from the questions, we may have ended up with a different decision in Lynch 1. We may have been closer to the Carcione decision out of the 11th Circuit. But you weren't the panel there. And I think that is a difficult thing for this panel to overcome. The first panel in Lynch said apply Collins. Collins was applied wrongly. Applying Collins was applied in a way that makes everybody subject to a House Act robbery if they're robbed. So, yes, I think law of the case is a problem. If I have not answered Judge Quackenbush's question, I'd like to, but otherwise I'll run while I can. Kagan. Is there anything you want to say about any of the other issues? Well, there is one other issue that we seem to pass in the night on, and that is – and none of these issues matter if the Interstate Commerce Clause jurisdiction is not there. The case is gone. But there's an issue that the parties seem to pass in the night on without the government addressing two cases in the circuit that we think control it, and that is the exclusion of Lynch's defense, in essence, by Judge Malloy saying you cannot put on evidence that would have corroborated Lynch's fear of Pizzacello. Both witnesses and Lynch's own testimony about how he was afraid of this guy had seen him pull guns on people. Other people had had him pull guns on people. He was bragging about being a hitman for the mob. The impossibility in this case, because of exclusion of that evidence, was explaining to the jury why Lynch engaged in the cover-up so zealously as he did. And what exactly – he did get some of this evidence in, in terms of his state of mind. He did state sometimes that he was afraid of Pizzacello. He said I was afraid of him, or he was a dangerous guy. Sometimes it was. Is he – does Lynch claiming, or are you claiming on his behalf, that he knew about these other incidents with regard to Pizzacello that he wanted to put on? A lot of them. He was afraid because he knew that Pizzacello had done X, Y, and Z? Yes. Specifically. Yes. The other things that he wanted to put on were things that he specifically knew about. Yes. But I'm not sure that under this Court's decisions in James and De Petris, you need to know, because it's corroborative of what you do know of your state of mind. But in our case, Lynch and Knight were friends. Knight had Pizzacello hold a gun to his head. Lynch – I think our proffer was that Lynch knew that Pizzacello had bragged about being a hitman for the mob and had killed people. He knew that he carried a gun. He knew that he was a dangerous guy. But Lynch didn't have that mafia knowledge. I believe that he did. No, that was some of – I read your motion in Lemonnet. Not ours, theirs. What? Not ours, theirs. No, it was your Rule 17 motion to subpoena the witnesses that you wanted to bring in. And these were witnesses that allegedly heard Pizzacello say, I was part of the mafia. I think the difference, and I'd like to hear from you on this. The James case you rely on, the direct defense was self-defense. The lady said, I gave the guns to my daughter because I was scared to death of this guy. And to protect myself from death or grievous bodily harm, I gave the guns to my daughter. That's not the case with Lynch and why he didn't go to the police. He was allowed to testify, and it's in the record at length, that he didn't go to the police and did not run because, quote, he would have shot me. Lynch said that in the testimony. Lynch said he was fearful for himself. He had reason to fear Pizzacello. And in that case, the objection was overruled. On the other hand, when Lynch said, Larry's a dangerous guy, the objection was sustained. There was some inconsistency there. Then we have the infamous page 1077 on the three different versions of the transfer. But I think the bottom line was that Lynch said, I did think he was a danger to me. He was allowed to testify at 1078. I didn't go to the police because I was afraid of Larry. I think that was pretty clear in the record that Lynch was afraid of Pizzacello. What she wanted was to corroborate that he had reason unknown to him. Well, not only he had reason unknown to him, he had specific reasons known to him, and there were other reasons unknown to him. And I think that's what James says. What was known to him that was precluded from introduction? Page 36 of our – 36 and 37 of our brief. He wasn't allowed to testify about Pizzacello bragging about killing the man and getting away with it. Didn't allow him to testify. Lynch was precluded? Yes. What's the page in the transcript? It's Volume 4, 1075, Excerpt 223. 1075? Yes. You wanted to examine Lynch about some of this, and you also wanted to bring in other witnesses. Yes. Yes. And the answer might be different, presumably, as to one or the other. I don't think so under James, because what the Court basically said is you don't necessarily have to know it for that to be corroborative of your state of mind. You're saying to a jury, I'm afraid of the guy, and here's X, Y, and Z reasons. There's three categories. One is things that he knew about, which may have involved somebody else, so we could bring the other person in to corroborate that the thing that he said happened, happened. Right. So there's what he testifies to, it's what other people testify to about things that he knew about, and then it's what other people testify about about things he didn't know about. And you might come to different results as to. I understand that James allowed all three of them. And he got in a little part of one, a very little part of one, without any specifics to show why he was being credible. You can't just, in a case like this where Lynch really had a huge burden of explaining why he went along with this extensive cover-up, he needed to be able to say specific reasons. He didn't need to just say Larry's a dangerous guy. This jury needed to understand Larry's a dangerous guy because of X, Y, and Z. And not only do I know it, but other people will tell you I'm telling the truth about  And, in fact, there are other people I didn't even know about, but it corroborates all of us. So it has to be true. I mean, at first he's fairly far-fetched. I understand that James allowed it, but James was a self-defense defense. But one and two seem less far-fetched. I'm sorry? One and two seem less far-fetched. One and two, well, we certainly didn't get it in. We got all three categories. Right. We had all three categories. We got in a little bit of number one, his own I'm afraid of him, but that's not the corroboration that a guy like this needed in front of that jury to be able to be persuasive that he was afraid. Here's that 1075 quote. I already quoted it. You were asking him, Mr. Lynch, on the stand, why didn't you talk to one of these people that had happened or what had happened and ask for help? One of those people meaning the people at breakfast. They had breakfast up there. Right. And the answer was, I didn't. I think I was just too scared at the time to do anything. Larry's a dangerous guy. Right. I quoted that before. There was an objection which was sustained, but then the next question was, did you have reason, this is your question, you have reason to fear Mr. Pizzacello. Objection is going to character, and I have problems with those character objections. But the objection was overruled, and the defendant said, yeah, I was afraid of him. Right. But he didn't get to corroborate it, and that's where we have our complaint. All right. Thank you very much. We'll give you five minutes for rebuttal. And why don't you set the clock for the government at 25 minutes. We'll start from there. Counsel. Morning, Your Honors. My name is John Drennan. I work for the Department of Justice. What is your name? I'm sorry. John Drennan. I work for the Department of Justice, and I represent the government in these proceedings. You are not involved in the trial in this case, are you? No. I'm making a correction. How much do you know about all these objections in the Rule 17 motions, and swinging back and forth on whether or not Mr. Lynch could say Pizzacello is a dangerous guy, and what the conflict is in page 1077 of the transcript? Well, I've read the entire transcript. I've read all of, I believe, the relevant motions, pretrial motion eliminate. So I think I'm prepared to answer those. I do agree there were some inconsistent rulings as far as what Mr. Lynch could testify to. Well, I believe that the district court was attempting to get Mr. Lynch to testify from personal knowledge. And when we came close to the line where it looked like he was going past that, the district court said it would call a halt. Personal knowledge would mean that I heard such-and-such say that he killed somebody. Yes. And he was, in fact, allowed to testify that he saw somebody, Pizzacello, kill somebody. Well, he was referring to Pizzacello. Yeah. I just saw him kill someone. He's referring to Pizzacello. Right. And he says, aside from the fact that he always carries a gun, I just saw him kill someone. Right. So that's this crime. That's this crime. That's this crime. That's right. This is not some other event. That's right. So what he wasn't allowed to do is bring in extrinsic evidence of other crimes, which is entirely appropriate. Again, defendant seems to be … He's referring to him saying that I knew other things that … I myself knew other things that Pizzacello had done that were violent, specific ones as opposed to general ones. Your Honor, fear is not a defense to robbery. It can only be … It's not a question of a defense. It's a question of whether his overall explanation … It was part of his story. He had a story. He had a defense, which was … And his story was that Pizzacello was the one who did the shooting, not him. And why didn't you tell anybody? Because I wasn't afraid of Pizzacello. So it was an integral part of his defense. Yes? No, Your Honor. The cases that go to this involve self-defense. It's an affirmative … The cases that go to this involve self-defense. It's an affirmative defense. There was no request … Why does it matter, then? It matters because this is extrinsic evidence. Extrinsic evidence is normally excluded. And why does it matter if it's a defense or a self-defense as to when it can come in? An affirmative defense has elements. In James, what wasn't allowed was to prove one of the elements of an affirmative defense. Here he was allowed to show that he was afraid of John Lynch … Larry Pizzacello. Excuse me. And how that hooks up with an evidentiary decision. When this was a legitimate defense, if not an affirmative defense, what difference does that make? It's not a legitimate defense in the non-affirmative defense sense. That is, it's simply not a defense that you were afraid, so you, you know, robbed somebody. Here's the theory as I understand it. A defendant ought to be able to put on the entirety of a defense. And certainly, one of the crucial points of Lynch's defense was … I mean, his story was that Pizzacello was the one that did the killing, not him. Yes, that was his story. You know, the interesting thing is the jury, under special circumstances, declined to find that Lynch was the one that actually shot the victim. That's right. So he says the soft part of his defense is why he didn't report this to authorities. And his response to that, which would appear to be critical to the presentation of his explanation for why he didn't report it to authorities, was that he feared Pizzacello. No, that's not true, Your Honor. If you look at page 1077, and if it please the Court, I'll just read some of this to you. 1077 line what? I am looking at line 18, Your Honor. Why didn't you go back to Las Vegas? You didn't go to the police? No. Why not? 1077 line what? Oh, line 18, Your Honor. 18? Yeah, about two-thirds of the way down the page. My line 18 says, and when you got back to Las Vegas? You didn't go to the police. No. Why not? I was hoping that I could just get away from this whole thing. Well, you stayed a few days at Larry Pizzacello's house. Yeah, I stayed there. I stayed there two days at Larry's house. Why was that? I was supposed to go and stay with my brother and his girlfriend Donna. Well, excuse me. I was supposed to go to stay with my brother, and his girlfriend Donna was sick. I wasn't ready to go stay with my mother at my mother's house and my mother and stepfather. And Nancy was afraid. She wanted me to stay. Objection. And we get that straightened out about Nancy. Objection sustained. Right. The stuff about, yes, I can read the whole thing. Objection sustained. Why didn't you go to your mom's house and tell her what happened? I just couldn't do that. John, you've got to explain to the jury why you didn't go to the police or your family and tell them what happened. I was, you know, I was afraid of Larry. But at the same time, I know Larry's a cousin. Larry's cousin was a friend of mine. And I know his wife and his kids. And I just really wanted to get away from this. I didn't kill the guy. I just wanted to be away from this whole thing. I didn't want to get involved in anything further. I just wanted to forget everything. His defense essentially here was he wanted to put this behind him. The emphasis here on his fear of Fisichello simply doesn't cohere with what's on the black and white page. Well, but you're saying that's his defense. But and the fact that he wasn't entitled to say all of the bad things he knew or heard about Fisichello doesn't make any difference. Well, you know, he gave his primary defense here from what I've read, which is where the operative page is, is that he wanted to put this whole thing behind him. Therefore, he was able to give his defense. But this all happened after several different attempts of his to say that he was scared of Larry, where there were objections, several of which were sustained at that point. And he also knew presumably that there had been rulings that he wasn't going to be able to introduce any corroboration. So this defense wasn't he wasn't essentially he was being hampered in making this defense. He was, again, I don't know that he was hampered from Judge Quackenbush's, excuse me, Judge Quackenbush's recitation of the. What would you have done? This is earlier. 1064. 1064. He would have triggered the reaction. He would have shot me, I have no doubt. Why did you go to screen? I couldn't even try it. In fact, if someone were to comment, he would have gotten shot. I move to strike that last comment sustained. Then Ms. Clark says you're a fair player for yourself. Yeah. That's as much as he got in. So, again, on 1070, again, why didn't you get away from Larry Pizzagillo right then? I was scared. But that's as much as he was able to get in about that. If anybody tried to say anything more, it was the objections were sustained. Well, then he's simply changing his story, is what you're saying. You know, he was able to get in. He had multiple motives. And every time he did say as part of that that he was, and the part you're writing about. Yes. And when he's asked directly, why is it that you didn't go to the police, he says, I wanted to get this behind me. He does get in that he was scared. But that's not what he's primarily relying on. Is there any consistency to say I want to get it behind me because I might get shot if I open my mouth? It doesn't seem to be what he's saying. He's saying that I knew his kids. He's a friend of mine. I knew his cousin. I just I wanted this to be water under the bridge. Why don't we move on to Hobbs Act and interstate commerce? Let me focus you to ask you to begin with addressing this Collins argument about law of the case. You know, to refresh your memory, as I understand it, her argument is that Lynch, the Lynch one decision, told the district court, in essence, it had to apply the Collins test or dismiss the prosecution, dismiss the indictment with prejudice. Are we bound to that? Or is this panel able to look beyond the Collins test? What the panel did was adopt the Collins test. But the Collins test has never been applied to exclude direct evidence. If you see, say, Carcione and 11th Circuit, 11th Circuit prior to Carcione and Diaz accepted the Collins test. In Carcione, there's no mention of Collins or indirect effect on the individual, although that was a woman who was robbed in an individual capacity of personal property. Let me see if I understand. Your argument is that we can look at the end of Lynch one's and its direction to the district court. We can read into it that that test applies only to indirect proof and that we're permitted to look at the record to see if there, in fact, is direct proof. There's nothing in Lynch one that would indicate anything to the contrary. Lynch one talks in very theoretical terms about what sort of proof would be appropriate for any at the very end. They say, you know, grant the Rule 29. Under the new test, it should again deny Rule 29 motion. If not, it should grant the motion. Right. And there's no way to get out of answering this issue. The government prevailed, so we're here on defendant's appeal. Had we lost, we'd be up again on the government's appeal. The question is this, as I understand it. Are we therefore restricted to looking at whether you have, as you tried to do in the district court, understandably, succeeded in showing one, two, or three of the Collins test as articulated in Lynch? Or can we look, as in Carcione, at a different theory of the case? Yes. I understand that the Lynch one panel adopted the Collins test as it was implemented in other circuits. As it's implemented in other circuits, you can use direct proof. You use the Collins test when you don't have any direct proof, and you need to ferret out the connections of the individual to interstate commerce. What's your best case, including Collins itself, that says the Collins test is aimed at, focused upon indirect proof? Well, I would just point out that Carcione, which is a Collins, comes from a Collins circuit, doesn't involve a Collins test at all, although it's clearly a robbery at an individual. You simply don't have to get to it, though. Is Carcione post-Collins? Carcione is post-Collins. Well, it's post-Collins and post-Diaz where the Eleventh Circuit adopts the circuit's test. Okay. So Diaz is where Eleventh adopts Collins. Exactly. You're back at the Department of Justice. You're probably used to dealing with making decisions about seeking in bank review and that sort of thing. What's your take on whether there's inherent tension between Atkinson and Lynch 1? As I understand it, this Lynch 1 interpreted Atkinson as a business case. And then wanted to distinguish that from individual cases. So I don't see that there's an inherent tension. The only real question is, and it wasn't determined by the Lynch panel, could you look at other than indirect evidence? And as I'm arguing, you can. So I really don't see the tension. Well, Atkinson involved some people who were lured out to building sites and then held hostage, and their ATM cards and codes taken. And as I understand the facts, they were never able to get money from the transaction. That's correct. The word business appears in exactly one place. McGrath contacted various businessmen and women in the Pocatello area. I find no discussion in Atkinson about the business that was impacted by the robbery itself being involved in interstate commerce. I agree that I was somewhat startled by the Lynch 1's lashing on to the business aspect of it. I would also point out that the ATM card robberies seem to be personal ATMs. That is, they seem to be directed to their personal bank accounts and have their personal monies at stake. So I'm not entirely comfortable. If we were arguing this, and I guess one way to ask this question, if we were arguing this appeal for the first time, and the only decision we had to deal with was Atkinson, in other words, pretend Lynch doesn't exist, isn't this a very different case than if you imagine only Lynch exists? Yes, I think it is different if only Lynch existed. Although, again, I don't think we need Atkinson, and I don't think we need to go to the Collins test. So to a certain degree, I don't think this panel is bound by either of those decisions. I mean, there's a very straightforward theory here. These people stole an ATM card. Use of an ATM card necessarily involves the robbers in an interstate transaction. That's it right there. That's what's disturbing about it. Then it would have to be that if somebody in Las Vegas took an ATM card from somebody else and nobody ever left the state, you would still be able to bring a Hobbs Act violation. That's correct. If you create a likelihood that an interstate transaction will occur, that would be a Hobbs Act violation. It's different than, say, stealing cash, where you could, say, turn around and just use it as a wholly local matter, say pay your rent. Stealing an ATM card has interstate implications. That's true. It's not to say that every theft of an ATM card will create a Hobbs Act violation. If my wallet were stolen today, they would find cash, some credit cards and an ATM card. If they took the cash and threw my wallet down the storm drain, likely. If they use it, yes. Then it's highly likely, in fact, almost necessary that that would be involved in an interstate transaction. Is that because the wires are being used to go back to the server in Kansas and back? Yes. Do you think that's sufficient interstate nexus to sustain a Hobbs Act conviction? Yes, I do. Well, then, you know, I also note that the findings, the trial judge in this case on remand, he said, well, the bank lost money. Yes, sir. There's nothing in the record that is there to support that. No, it appears that the district court was taking something like judicial notice. I think we've agreed that there's nothing in the record to support the fact that the bank lost money, any money. Yeah, no, I do agree with that. And it does appear that he was taking some sort of judicial notice of the banking loss. Again, you don't need to get that far. I don't think that's how criminal cases get decided. Well, again, he got to the right decision. However, you really can get even there through the Collins number two test, that is the diminution of assets. The district court reasoned that the deposits were not assets of the savings and loan institution, or rather credit union. That really doesn't matter for the purposes of depletion of assets theory. We shouldn't let the word assets fool us. It's a question of depletion of resources. Depletion of assets theory works this way. You take money or resources from an institution that's involved in interstate commerce. Resources were depleted, quote, reduced in any manner in this case. Well, yes, there was the fraudulently taking of the money from Brian Carrero's account. There's evidence that they used his credit card to get money out of his account. But there's no evidence whatsoever that the bank lost dissent. It doesn't need to lose dissent. The question here is simply a diminution of effect. It doesn't have to be the bank's assets. It does not an element. A temporary depletion will work just fine. Well, but where is there any evidence that the bank's resources were reduced in any manner? It was the depletion of the money from the account. Where's the evidence? The only bank person that testified in this case is the person who testified when you go to the ABM card. Debra Heenan. The lines light up between where you're at in Kansas and back to where you're at and over to the bank that issued the card. That's the only evidence in this case as to what took place at the bank. Yes, that's right, except for the robbery or the fraudulent taking out of money from the account. That is, there was evidence that this account was entirely depleted. Where in the record is there evidence of who suffered that loss? It's not a question of loss. It's a question of affecting interstate commerce. Suffered that depletion. For a depletion of assets theory, which is an indirect theory of inference, you don't need that. What you need is that some resource was removed from a business doing interstate business, commerce. And, again, Debra Heenan clearly testified to that. Physically taken out, even if it isn't there. So, in other words, it's a depletion of resources. So if I'm if I have your jewelry in my house and you take it, you're depleting my resources. Well, if you're using my resources, if you're using my resources to, say, make loans or something like that as a bank is. Yes. Let me ask this question. If we were to do as your opponents request, and that is reverse the district court and direct the dismissal of the indictment. Could Lynch be prosecuted in state court in Nevada? It's not clear to me that it could be. Maybe different charges could be developed than the charges that have been thrown out, such as conspiracy to commit murder. You haven't thought I haven't thought that through conspiracy. There might be a double jeopardy problem for the conspiracy to commit murder since he was charged with murder. But maybe there's some some robbery statute that might be used. I think the statute of limitations, the government had a plethora of statutes they could have used. But we all used to think federal court was about the dire act, the travel act, the transportation of misappropriated property. They didn't choose to bring anything. They put all their eggs in the hob's basket. And now we're facing this problem. The most obvious one would be the Travelers Act. But that requires that you travel to a place in order to commit a crime. We have evidence that Lynch went up to Montana to do a number of things. And eventually he lured the victim up there and killed him. But it's not clear that he traveled to Montana to do anything but see his father, to hunt and to dry out on drugs. Okay.  Thank you. Thank you very much for your argument. Ms. Clark? Five minutes. I wanted to go back, if I could, to the question that concerns me about Collins and law of the case. I don't think I ever got an answer, a good answer anyway, to Judge Clark. I don't think Collins distinguishes between this direct and indirect. Now, you may say that there wasn't this interstate travel prior to or, well, there was interstate travel after the robbery in Collins. But I don't think Collins does that. According to Lynch 1, the Fifth Circuit under Collins, the Fifth Circuit formulated a test for determining when the robbery or extortion of an individual would have the de minimis effect. So they were looking to Collins period when an individual, as opposed to the 7-11, the grocery store, the Safeway, whatever, is robbed. And then what happened in this particular case is the panel, three judges of this court, said we're sending it back to the district court. First, we adopt the Collins test, and the Collins test uses the only if language in the quote from this case. Under this test, crimes directed toward an individual violate the Hobbs Act only if. That's at page 1053 of Lynch 1. And then at page 1055, we therefore adopt the test enumerated by the Fifth Circuit in Collins and remand. If the district court concludes that there is Federal jurisdiction under the new test, it should again deny Lynch's Rule 29 motion. That's what this Court decided the first time, sent it back, and we're back up on the application of that test. Well, right before the sort of last paragraph in this discussion, and I think it's at 1055. Right. It's right under sub B. But the only connection of these actions? No, it starts, our task is now to determine how to apply the Collins test to the case before us. Right. Lynch was charged with commission of terrible acts that were in violation of state law. But the only connection of those actions to interstate commerce was the robbery of Carrero's truck, an ATM card, which was used to take roughly $5,000 from a private bank account. Suppose we conclude that on the record that last sentence is inaccurate, that there was other evidence. Thank you. I think the train left the station, number one. I think that this panel is bound by the decision of the previous panel in this case, unless the in-bank court decides that was so erroneous, that factual dependency was so determinative of the outcome that it, you know, it changes the whole outcome. I think what the Court would have to decide is you didn't really adopt the Collins test, whereas Judge Quackenbush suggests that there are two tests. Collins is only an indirect effect, and then there's a direct effect. But that doesn't seem to be what Collins was saying. One last point I wanted to make, and it's Judge Bregon's question about does it matter if you use the ATM card. That, again, is why Collins is a good test, because we've got the guy stealing the wallet out of the prosecutor's pocket, taking the cash, and he's on the way to the ATM machine, and he gets arrested. It's a State crime. He gets to the ATM machine and withdraws the money. It's a Federal crime. That's the kind of stuff that Collins was trying to say. We're not looking at what happens between individuals. That's why we're looking at what happens between businesses and commercial ventures. That's why you can't be looking at what happens to the ATM card. Okay. Thank you very much. Thank both counsel for their arguments. They're very helpful. It's a very difficult case, and it's submitted for decision, and the Court will stand in recess for the morning. Thank you.
judges: Hawkins, Berzon, Quackenbush